# No. 25-20125

# In the United States Court of Appeals
# for the Fifth Circuit

---

Staci Barber,

*Plaintiff - Appellee,*

v.

Bryan Scott Rounds, Principal of Cardiff Junior High, Sued in his Individual and
Official Capacities,

*Defendant - Appellant.*

---

## On Appeal from

United States District Court for the Southern District of Texas

4:24-CV-1004

---

## BRIEF OF APPELLEE STACI BARBER

---

SUBMITTED BY:

BRETT B. STALCUP
STALCUP LAW
3811 Turtle Creek Blvd. Suite 175
Dallas, Texas 75219
Telephone: (214) 219-1000
Facsimile: (214) 219-1003
Email: bstalcup@stalcuplaw.com

CHRISTINA A. COMPAGNONE
GEOFFREY SURTEES
NATHAN J. MOELKER
AMERICAN CENTER FOR LAW AND
JUSTICE
201 Maryland Avenue, NE
Washington, D.C. 20002
Telephone: (202) 546-8890
Email: nmoelker@aclj.org

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Staci Barber | Jay Alan Sekulow of American Center for Law & Justice Washington, DC |
| Staci Barber | Jordan Sekulow of American Center for Law & Justice Washington, DC |
| Staci Barber | Stuart J. Roth of American Center for Law & Justice Washington, DC |
| Staci Barber | Christina Compagnone of American Center for Law & Justice Washington, DC |
| Staci Barber | Geoffrey Surtees of American Center for Law & Justice New Hope, KY |
| Staci Barber | Nathan Moelker of American Center for Law & Justice Washington, DC |
| Staci Barber | Brett Stalcup of Law Offices of Brett Stalcup Dallas, TX |

| Appellants: | Counsel for Appellants: |
|---|---|
| Bryan Scott Rounds | Christopher Gilbert of Thompson & Horton, L.L.P. Houston, TX |
| Bryan Scott Rounds | Alexa Gould of Thompson & Horton, L.L.P. Houston, TX |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| Defendant Katy Independent School District | Christopher Gilbert & Alexa Gould |

/s/ Nathan J. Moelker
Attorney of record for Staci Barber

## STATEMENT REGARDING ORAL ARGUMENT

Appellee-Plaintiff Staci Barber, while disagreeing with Appellant-Defendant Bryan Scott Rounds's description of the nature of this case, agrees that the decisional process would be aided by oral argument and likewise requests oral argument.

# TABLE OF CONTENTS

**Contents**                                                                                     **Pages(s)**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF CONTENTS ...................................................................................... iv

TABLE OF AUTHORITIES ................................................................................ vi

JURISDICTIONAL STATEMENT ....................................................................... 1

STATEMENT OF THE ISSUES ........................................................................... 1

STATEMENT OF THE CASE .............................................................................. 1

SUMMARY OF THE ARGUMENT ..................................................................... 9

ARGUMENT ...................................................................................................... 11

  **I.**   **The District Court Properly Applied Motion to Dismiss Standards by Accepting Plaintiff's Allegations as True.** ................................................ 11

  **II.**   **Qualified Immunity Is Defeated Because *Kennedy* Clearly Established That Public School Officials Cannot Categorically Ban Teacher Prayer Where Students Might Be Present.** ............................................... 16

      **A.**   ***Kennedy* Clearly Established that Teachers May Not be Prohibited From Prayer in the Presence of Students.** ...................... 17

      **B.**   **Rounds Is Not Entitled to Qualified Immunity Because His Conduct Violated the Clearly Established Standard of *Kennedy*.** ... 20

      **C.**   **Appellant's Attempted Factual Distinctions Cannot Survive Scrutiny.** ............................................................................................ 23

**III. Qualified Immunity Cannot Be Salvaged by Misapplying the Equal Access Act, Which Does Not Override Teachers' First Amendment Rights to Private Religious Expression.**....................................................26

**IV. Qualified Immunity Is Defeated on the Equal Protection Claim Because Selective Enforcement of Religious Speech Restrictions Violates Clearly Established Law.** ............................................................29

CONCLUSION ...............................................................................................31

CERTIFICATE OF SERVICE ..............................................................................32

CERTIFICATE OF COMPLIANCE.......................................................................33

# TABLE OF AUTHORITIES

**Cases**………………………………………………………………………**Pages(s)**

*Bd. of Educ. v. Mergens,*
  496 U.S. 226 (1990) .........................................................................28

*Behrens v. Pelletier,*
  516 U.S. 299 (1996) ...........................................................................4

*Borden v. School District of East Brunswick,*
  523 F.3d 153 (3d Cir. 2008) ............................................................25

*Clark v. Thompson,*
  850 F. App'x 203 (5th Cir. 2021)......................................................4

*Daugherty v. Vanguard Charter School Academy,*
  116 F.Supp.2d 897 (W.D. Mich. 2000)............................................28

*Doe v. Duncanville ISD,*
  70 F.3d 402 (5th Cir. 1995)..............................................................25

*Doe v. Wilson County School System,*
  564 F.Supp.2d 766 (M.D. Tenn. 2008) ...........................................28

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) .........................................................................21

*Hutcheson v. Dall. Cnty.,*
  994 F.3d 477 (5th Cir. 2021) ...........................................................12

*Kennedy v. Bremerton Schoo District,*
  586 U.S. 1130 (2019) ................................................................ 10, 18

*Kennedy v. Bremerton School District,*
  597 U.S. 507 (2022) ................................................................. passim

*Keyishian v. Bd. of Regents,*
  385 U.S. 589 (1967) .........................................................................16

*Morgan v. Swanson*,
659 F.3d 359 (5th Cir. 2011) ........................................................... 4, 12

*Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*,
391 U.S. 563 (1968) ............................................................................16

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
393 U.S. 503 (1969) ............................................................................21

*Wilson v. Layne*,
526 U.S. 603 (1999) ............................................................................20

## Statutes

20 U.S.C. § 4071 .......................................................................... 26, 27

28 U.S.C. § 1291 ...................................................................................1

## Other Authorities

Fed. R. Civ. P. 12 ................................................................................12

# JURISDICTIONAL STATEMENT

This case is an appeal from the District Court's denial of qualified immunity to Appellant Bryan Scott Rounds, a Defendant in the matter below. Rounds's Motion to Dismiss based on qualified immunity was denied by order of United States District Judge Alfred H. Bennett, United States District Court for the Southern District of Texas, Houston Division, on March 26, 2025. ROA.382-396. Appellate jurisdiction in the Court of Appeals is proper under 28 U.S.C. § 1291. Appellant Rounds's Notice of Appeal was filed on April 8, 2025. ROA.430.

# STATEMENT OF THE ISSUES

Whether the District Court correctly found that *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), created clearly established law that prohibits a principal from instructing a teacher that she may not pray where she is visible to students.

# STATEMENT OF THE CASE

## A.    Procedural History

On March 19, 2024, Plaintiff Staci Barber filed her Complaint against Defendants Katy Independent School District and Bryan Scott Rounds, in his individual and official capacities, alleging violations of her First Amendment rights to free speech and free exercise of religion, her Fourteenth Amendment due process

and equal protection rights, corresponding rights under the Texas Constitution, and rights under the Texas Religious Freedom Restoration Act. ROA.8-27.

The Complaint arose from Defendant Rounds's actions on September 26-27, 2023, when he prohibited Barber from praying at the school flagpole before her workday began because students might happen to see her. *Id.* Rounds's conduct violated clearly established constitutional rights by restricting Barber's ability to engage in personal religious exercise on school premises during non-instructional time, simply because it could be visible to others.

On April 16, 2024, Barber moved for a preliminary injunction based on her First Amendment free speech and free exercise claims. ROA.46-67. Following oral argument on May 14, 2024, the District Court denied the motion for preliminary injunction on May 28, 2024. The decision did not consider whether Barber was likely to succeed on the merits of her claims, but whether she faced irreparable injury. ROA.350-355.

On April 18, 2024, Defendants filed a Motion to Dismiss, with Defendant Rounds asserting qualified immunity as an affirmative defense. ROA.191-220. On March 26, 2025, the District Court denied Defendants' Motion to Dismiss in a comprehensive written order. ROA.382-396. The court rejected Defendants' arguments and found that Barber had adequately stated constitutional claims against both Defendants.

2

Critically, and most relevant to this appeal, the District Court held that the Supreme Court's decision in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), clearly established that Rounds's conduct violated Barber's First Amendment rights, thereby defeating his claim to qualified immunity. ROA.388-390. The court specifically found that the allegations in the Complaint established that Rounds violated law that was clearly established by *Kennedy* that protected public employees' rights to engage in private religious expression. *Id.* In so doing, it rejected Rounds's attempt to limit his directive to the gathering of a student group: "Plaintiffs allegations are not limited to Principal Rounds' directive not to participate in the SYATP event." ROA.389.

In addition, the District Court distinguished the facts of this case from those involving employee participation in student religious activities that raised Establishment Clause concerns, noting that Barber sought only to engage in her own private religious exercise during non-instructional time. "*Kennedy* serves as an on-point case that clearly establishes that it is a violation of the First Amendment for a school to instruct its employee that she cannot pray in the presence of students." ROA.390.

Defendant Rounds filed his Notice of Appeal on April 8, 2025, ROA.430, challenging the District Court's denial of qualified immunity. Following this appeal, the District Court stayed all proceedings pending resolution of this interlocutory

3

appeal. ROA.480-485. The claims against Defendant Katy Independent School District and against Defendant Rounds in his official capacity remain pending below and are not part of this interlocutory appeal, which is limited to the qualified immunity determination as to Defendant Rounds in his individual capacity.

### B.     Statement of Facts

As a preliminary matter, a crucial principle should guide this Court's approach to the facts on appeal: In addressing qualified immunity at the motion to dismiss stage, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original). The "factual universe at the pleading stage 'is bounded by the four corners of the complaint.'" *Clark v. Thompson*, 850 F. App'x 203, 206 (5th Cir. 2021) (quoting *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011) (en banc)). In other words, the Court must "determine whether the [defendants] 'are entitled to qualified immunity based on the facts alleged in the complaint, which [the Court] must accept as true, drawing all reasonable inferences in favor of' the plaintiff." *Id.* (quoting *Morgan*, 659 F.3d at 401). Contrary to this standard of review, Appellant's Brief relies extensively, in both the statement of facts and argument, on assertions *outside* the Complaint, such as Rounds's affidavit. ROA.253-255.

Staci Barber is a mathematics teacher with more than twenty-six years of experience who has worked at Cardiff Junior High in the Katy Independent School

District since 2015. ROA.9. She is a practicing Christian who regularly engages in prayer and other expressions of her faith. *Id.* Principal Bryan Scott Rounds oversees Cardiff Junior High and directly supervises Barber. *Id.*

From Barber's first week at Cardiff Junior High in 2015, Rounds demonstrated hostility toward religious expression. ROA.10. When Barber asked about starting a campus chapter of Students for Christ—a group she had successfully sponsored at her previous school—Rounds told her that "Katy does not have religious clubs and that Cardiff was not allowed to have any religious clubs per Katy ISD." *Id.* Despite Barber's repeated inquiries over the years, Rounds maintained this position, even though many other schools within Katy ISD hosted religious student groups without issue, including Fellowship of Christian Athletes (FCA) chapters, Muslim student groups, and other religious organizations. *Id.* In the 2023-24 school year, following an intimidating process, Rounds finally approved an FCA application. *Id.*

And then, in a further example of this animosity towards religious groups, Rounds specifically prohibited Barber from participating in "See You at the Pole" (SYATP). SYATP is a nationally recognized student-led prayer event held annually on the fourth Wednesday of September, where millions of people gather at school flagpoles before the school day begins. ROA.11. Barber had prayed at the flagpole throughout her tenure at Cardiff Junior High without previous incident. *Id.*

5

At the beginning of the 2023-24 school year, Katy ISD's policy contained the following language:

> The District is committed to the constitutional principle of separation of church and state. Board Policy makes it clear that employees will neither advance nor inhibit religion. Employees may not pray with or in the presence of students.

*Id.* Consistent with past practice, Barber sent an email to staff inviting them to pray at the flagpole at 8:00 AM on September 27, 2023—twenty minutes before their official work hours began and before the student-led FCA prayer, which she understood would begin at 8:20 AM. *Id.*

In response to Barber's invitation, Rounds sent two emails that violated clearly established law. First, he sent a staff-wide email prohibiting prayer, stating that "Board Policy prohibits staff members from leading students in prayer or praying with or *in the presence of students.*" ROA.12 (emphasis added). Rounds then sent a message directly to Barber containing an unambiguous prohibition:

> Per district School Board policy, employees CANNOT pray with *or in the presence of students*. You cannot have a student group AND staff group both praying at the pole as this would be a violation of Board policy. . . . Even though it is before the school day, you are on campus *visible to students in your role as an employee*.

*Id.* (emphasis added). This directive was clear and categorical: Barber could not pray anywhere students might see her, even when she was off duty and acting in her private capacity. Simply being "visible to students in your role as an employee" was enough to ban Barber's religious speech. *Id.* In other words, Rounds's claim in this

6

appeal that "Rounds's email to Barber specifically focused on the SYATP Event," Appellant's Brief at 15, is manifestly false. Rounds issued a categorical prohibition of any "visible" religious conduct.

In her response to that email, Barber clarified: "Mr. Rounds, I didn't ask the students to attend. It is only for staff before students arrive just like we have done the past three years. . . . There will be no kids when we are out there." ROA.13. Rounds responded to that email with: "By 8:00 AM students are generally waiting at the front entry of the building," thereby implying that students being present at the building while the teachers prayed at the flagpole would render Staci Barber's conduct, praying at the pole without any student group, a violation of school policies. *Id.* Rounds never mentioned or informed Barber of the scheduling of FCA's activity.

Barber proceeded with her planned prayer, meeting with colleagues at 8:05 AM (before work hours and before students gathered) at the flagpole. *Id.* Rounds has *admitted* that no students were present praying with them. ROA.254.[1] While they were praying, Rounds called them into a conference room and reiterated his prohibition. ROA.13. He told them that "Katy ISD does not allow them to pray in front of students because students could feel violated or offended by their conduct."

---

[1] That admission is found in Rounds's affidavit, which is of course outside the four corners of Plaintiff's Complaint. Plaintiff only mentions the affidavit here in light of Appellant's (improper) reliance of that affidavit in his briefing before this Court.

*Id.* He stated categorically: "You can get together and pray together in private away from students, but you cannot do that in front of students." *Id.*

Most significantly, Rounds stated unequivocally that the teachers could not pray in any location where students would be present, even when this prayer occurred before the school day began and when teachers were not on school time. *Id.* He reiterated that it was considered impermissible for the teachers to pray in public where students might see their conduct or be influenced by it. ROA.14. Rounds's directives extended far beyond the SYATP incident and did not refer whatsoever to the gathering of a scheduled student group. He categorically prohibited Barber from any public religious expression where students could observe it.

Although this Court's review is limited to the Complaint itself, as the Appellant has gone beyond the Complaint, it is useful to know that, as Rounds has admitted, Barber recorded this conversation. ROA.254. Both the audio and a transcript of that recording are included in the record. ROA.418-429. In that transcript, Rounds made very clear his position: "in your role as educators and teachers with Katy ISD, you cannot pray in the presence of students, right? You do have the right to pray privately during like break time, before school, after school. You can get together and pray together in -- in private, away from students." ROA.420. Plaintiff Barber then asks an important question, clarifying whether

8

Rounds is merely prohibiting prayer at the flagpole when students have gathered there specifically, or categorically prohibiting prayer where students might see: "So do you want us to go to the parking lot?" ROA.421. Rounds refused, making very clear that his actions were in no way limited to prayer at the pole: "there are students at the front and you—so you can't do that." *Id.* In other words, Rounds prohibited Barber from praying in the *school parking lot*, where no student groups were gathered, *just because students might see her.*

## SUMMARY OF THE ARGUMENT

This case reduces to a simple proposition: the Constitution does not permit school officials to suppress the religious expression of teachers merely because others might observe it. When Principal Bryan Scott Rounds told mathematics teacher Staci Barber that she could not pray anywhere on campus where she would be "visible to students"—even before school hours, even in the parking lot—he crossed a constitutional line that *Kennedy v. Bremerton School District* made unmistakably clear.

The District Court properly applied motion to dismiss standards by accepting Plaintiff's well-pleaded allegations as true. Those allegations establish that Rounds imposed a categorical prohibition on Barber's religious expression anywhere students might see her. It was not merely a restriction on teachers participating in student prayer, but a sweeping ban on any "visible" religious conduct. This is

precisely the type of blanket suppression that *Kennedy* condemned when it asked whether schools could "fire a Muslim teacher for wearing a head scarf in the hallway or prohibit a Christian aide from praying quietly over her lunch in the cafeteria." *Kennedy*, 597 U.S. at 531. The Court's rhetorical question anticipated only one answer: No.

*Kennedy* clearly established that public employees retain their First Amendment rights at work and cannot be compelled to suppress their religious identity simply because students might observe their expression. The decision rejected the very policy at issue here—one that would treat teachers as "being on duty at all times from the moment they report for work to the moment they depart, provided that they are within the eyesight of students." *Kennedy v. Bremerton School District*, 586 U.S. 1130, 1132-1133 (2019) (Alito, J., joined by Thomas, Gorsuch, & Kavanaugh, JJ., concurring in denial of certiorari). Under such a regime, teachers could be "ordered not to engage in any 'demonstrative' conduct of a religious nature" if visible to students—precisely what happened to Barber. *Id.*

The constitutional violation becomes stark when examined against *Kennedy*'s teaching. Coach Kennedy prayed openly on the fifty-yard line after football games, in full view of students, parents, and community members, yet retained complete constitutional protection. Barber sought to pray quietly at a flagpole before school hours, when no students were present. If Coach Kennedy's highly public prayer was

constitutionally protected, Barber's more private expression must be protected even more strongly.

Barber has adequately pleaded an equal protection claim by alleging that Rounds selectively enforced district policy against her religious activities while permitting other employees to engage in similar conduct with student groups. These factual allegations, accepted as true at the pleading stage, sufficiently demonstrate both disparate treatment and Rounds's personal involvement in the constitutional violation.

The Constitution requires more of our public officials than reflexive hostility toward religious expression. It demands that they learn to "tolerate speech or prayer of all kinds" as "part of learning how to live in a pluralistic society." *Kennedy*, 597 U.S. at 540 (citation omitted). Rounds failed that constitutional test when he forced Barber to choose between her faith and her livelihood. The District Court correctly denied qualified immunity, and this Court should affirm.

## ARGUMENT

### I. The District Court Properly Applied Motion to Dismiss Standards by Accepting Plaintiff's Allegations as True.

The central flaw in Rounds's argument is its mischaracterization of what Rounds actually prohibited, transforming what he actually said, a sweeping ban on any religious expression visible to students, into a narrow restriction on teacher

participation in student-led events. This mischaracterization violates basic motion to dismiss principles by asking this Court to credit Appellant's version of disputed facts rather than accepting Barber's well-pleaded allegations as true, as required under FED. R. CIV. P. 12(b)(6).

A review of a motion to dismiss is limited to the four corners of the complaint. The Court's sole role is to evaluate the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Hutcheson v. Dall. Cnty.*, 994 F.3d 477, 481-82 (5th Cir. 2021). At the motion to dismiss stage, "our factual universe is bounded by the four corners of the complaint." *Morgan*, 659 F.3d at 401. This Court does not have "jurisdiction to resolve disputed factual issues or consider whether such disputes might entitle the principals to qualified immunity." *Id.*

Appellant mischaracterizes the constitutional violation at the heart of this case: Rounds's sweeping prohibition on Barber's religious expression anywhere on campus where students might observe such expression. The Complaint clearly alleges this categorical prohibition. When Barber emailed staff about praying "before students arrive," Rounds responded with an unambiguous directive not to pray anywhere students might see her: "Even though it is before the school day, you are on campus visible to students in your role as an employee." ROA.12. Rounds's instruction was not about preventing teacher participation in student prayer—it was

12

about banning any religious expression *in the presence* of students, i.e., anywhere "on campus visible to students." *Id.*

The Complaint alleges that Rounds applied a categorical prohibition that swept far beyond the flagpole incident to encompass any location on campus where a student might catch a glimpse of a teacher engaging in religious expression. Rounds made that clear in his email by saying, "[b]y 8:00 AM students are generally waiting at the front entry of the building." ROA.13. Rounds made no reference to the gathering or scheduling of a student group; instead, he made clear that the simple presence of students made prayer impermissible.

Appellant claims Rounds merely prevented Barber from "praying with students at a student-led event." Appellant's Brief at 6. But the Complaint tells a very different story: Rounds prohibited Barber from praying anywhere she would be "visible to students," regardless of whether any students were participating. He then directly told teachers "that they could not pray in any location where students would be present." ROA.13.

Following the mandate of Rule 12, the District Court credited the Plaintiff's allegations:

> Plaintiff alleges that Rounds categorically told her she could not pray "in the presence of students." Doc. # 1, ¶¶ 20-21, 29, 79. Though Rounds said this to Plaintiff in the context of the SYATP event, **he did not limit his directive to SYATP**. Indeed, Rounds, in an email sent directly to Plaintiff outlining his concern regarding her participation in SYATP, stated that "[e]ven though it is before the school day, you are

on campus visible to students in your role as an employee." *Id.* ¶ 21. Rounds also told Plaintiff that she could pray in "private away from students," but not "in front of students." *Id.* ¶ 28. Since the SYATP incident, Plaintiff has ceased engaging in religious activity at Cardiff before the school day begins out of concern that students may be present. *Id.* ¶ 42. Thus, **Plaintiff's allegations are not limited to Rounds's directive not to participate in the SYATP event**.

ROA.389 (emphasis added). The District Court did exactly what the federal rules require; it credited Plaintiff's allegations as true and limited its review, appropriately, to the four corners of the Complaint. The result under *Kennedy* was accordingly straightforward.

Ignoring these limitations, Appellant cites, repeatedly and explicitly, to his affidavit, ROA.253-255, as a basis for the Court's decision here. This affidavit contains a factual assertion that is **nowhere** in the Complaint, namely, that the student group was scheduled to conduct SYATP at 8:00 AM. As the Complaint makes clear, that was not Barber's belief. It was her belief that the student group would begin praying at 8:20. ROA.11. Barber, accordingly, prayed at the pole "before the prayer time for the FCA students." *Id.* Rounds's affidavit does confirm that Barber's understanding was correct, and no students did pray when she was doing so. Instead, they gathered at 8:20. But that is beside the point. The more fundamental point is that Appellant's attempt to base this appeal on his own factual assertions is wholly improper. Qualified immunity at the motion to dismiss stage—as here—is based on the pleadings, not the *defendants'* assertions.

14

In fact, if this Court were to go beyond the four corners of the Complaint, the record contains the full recording of everything Rounds said, confirming all the allegations in the Complaint and that Rounds prohibited Barber from praying even in the parking lot, just because students might see her. Appellant claims Rounds "never prohibited or even insinuated that Barber could not pray or engage in Bible study at school, in compliance with district policy and procedures." Appellant's Brief at 5. But the Complaint and the evidence show the contrary: Barber discontinued her prayer group specifically because of Rounds's directive, understanding it to prohibit religious expression where students might observe, because that is precisely what Rounds said. If a prayer group cannot meet to pray in the parking lot, it has no basis to meet in a classroom or foyer either.

This fatal flaw in Rounds's argument is most clearly evidenced by his discussion of Barber's "subjective belief." Appellant's Brief at 14. Appellant claims that "[t]he lower court held that *Kennedy* applied to this case because it focused on Barber's allegations that she *thought* Rounds's statements about SYATP meant she could no longer pray at school, instead of focusing on Rounds's actual conduct." *Id.* But the District Court did not base its decision on any subjective considerations, but on Plaintiff's allegation of fact that Rounds told her not to pray in the presence or "view" of students. Crediting that allegation is not relying on subjective

considerations but simply following the basic process for evaluating motions to dismiss.

In short, Rounds's argument mischaracterizes the record in this case to try to present Rounds as saying something he did not in fact say. Rounds did not merely tell a teacher not to pray "with students at a student-led event." *Contra* Appellant's Brief at 6. No, he told her she could not pray anywhere a student might see or view her conduct. ROA.13.

## II. Qualified Immunity Is Defeated Because *Kennedy* Clearly Established That Public School Officials Cannot Categorically Ban Teacher Prayer Where Students Might Be Present.

This case presents a straightforward application of clearly established First Amendment principles. *Kennedy* held that public employees retain their constitutional rights at work and cannot be required to suppress their religious identity simply because students might observe their expression. Rounds violated these principles when he categorically prohibited Barber from praying anywhere she would be "visible to students." ROA.12.

First Amendment protections for public employees are well settled. "The theory that public employment which may be denied altogether may be subjected to any conditions regardless of how unreasonable, has been uniformly rejected." *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968) (quoting *Keyishian v. Bd. of Regents*, 385 U.S. 589, 605-06 (1967)). The doctrine

16

that an adverse employment action against a public employee may violate the First Amendment right to free speech and free exercise is not novel, nor does it originate in *Kennedy*. Instead, it is a long-standing principle, commonly known as the *Pickering* doctrine, that has protected public employees in all manner of cases.

## A. *Kennedy* Clearly Established that Teachers May Not be Prohibited From Prayer in the Presence of Students.

The sole question presented in this appeal is whether, by telling Barber she may not pray anywhere students might possibly see her doing so, Appellant Rounds violated her clearly established rights. In *Kennedy*, a school district disciplined and ultimately fired a football coach for praying on the field after weekly football games. In examining whether Coach Kennedy's speech was protected under the First Amendment, the Court considered whether the speech (his prayers) took place within the scope of his official duties as a coach. 597 U.S. at 529. The Court concluded, "Mr. Kennedy has demonstrated that his speech was private speech, not government speech" because when he prayed, "he was not instructing players, discussing strategy, encouraging better on-field performance, or engaged in any other speech the District paid him to produce as a coach." *Id.*

The Court explained that the mere fact that an employee is on duty at the time of his/her speech does not categorically eliminate the First Amendment's protections. *Id.* What *Kennedy* held to be unconstitutional conduct is *directly* parallel to Rounds's actions here: the Bremerton School District prohibited "public and

demonstrative religious conduct" in view of students. *Kennedy*, 597 U.S. at 519.

When the *Kennedy* case first came before the Court in 2019 at a preliminary stage,

Justice Alito observed that the school's policy

> appears to regard teachers and coaches as being on duty at all times
> from the moment they report for work to the moment they depart,
> provided that they are within the eyesight of students. Under this
> interpretation of *Garcetti*, if teachers are visible to a student while
> eating lunch, they can be ordered not to engage in any 'demonstrative'
> conduct of a religious nature, such as folding their hands or bowing
> their heads in prayer. And a school could also regulate what teachers
> do during a period when they are not teaching by preventing them from
> reading things that might be spotted by students or saying things that
> might be overheard.

*Kennedy v. Bremerton School District*, 586 U.S. 1130, 1132-1133 (2019) (Alito, J.,

joined by Thomas, Gorsuch, & Kavanaugh, JJ., concurring in denial of certiorari).

The Bremerton School District argued, explicitly, that "any visible religious

conduct by a teacher or coach should be deemed—without more and as a matter of

law—impermissibly coercive on students." *Kennedy*, 597 U.S. at 540. In other

words, it took the position that it could justifiably limit religious activity because

students might happen to see it. *Kennedy* unambiguously rejected the notion that

employees must suppress their religious identity whenever students might observe

them. The Court noted that the school's policy would have prevented Coach

Kennedy from "even briefly and silently" giving thanks after meals in the school

lunchroom, because students might observe such religious expression. *Id.* at 531.

The Court found this result absurd. *Kennedy* directly addressed scenarios

18

identical to this case through pointed hypotheticals that expose the constitutional violation. The Court asked whether a school district policy could "fire a Muslim teacher for wearing a head scarf in the hallway or prohibit a Christian aide from praying quietly over her lunch in the cafeteria." *Id.* The Court's rhetorical question clearly anticipated a negative answer—such prohibitions would violate the First Amendment. "Not only could schools fire teachers for praying quietly over their lunch, for wearing a yarmulke to school, or for offering a midday prayer during a break before practice. Under the District's rule, a school would be required to do so." *Id.* at 540. These hypotheticals are integral to the Court's reasoning and directly control the outcome here. The Court did not mince words:

> Such a rule would be a sure sign that our Establishment Clause jurisprudence had gone off the rails. In the name of protecting religious liberty, the District would have us suppress it.

*Kennedy*, 597 U.S. at 540. Rounds's prohibition on Barber praying anywhere she might be "visible to students" falls squarely within the category of unconstitutional policies the Court strongly condemned as per se unconstitutional.

The Court rejected the claim that the First Amendment does not permit "an employee, while still on duty, to engage in religious conduct." *Id.* at 526. Coach Kennedy's conduct did not "involve leading prayers with the team or before any other captive audience," *id.* at 525, yet the Bremerton School District still sought to regulate only his conduct. The *Kennedy* Court explicitly rejected the *Lemon* test's

19

hostility toward religion, making it clear that Establishment Clause analysis should instead be based on "historical practices and understandings." *Id.* at 535-36. This framework is crucial because it eliminates the hyper-subjective interpretation, i.e., the thoughts of a fictional "reasonable observer," that had previously been used to justify suppressing religious expression. *Id.* at 534. Under *Kennedy*, the mere fact that students might observe a teacher's religious expression does not create an Establishment Clause violation. As the Court explained, "learning how to tolerate speech or prayer of all kinds is part of learning how to live in a pluralistic society." *Id.* at 540.

*Kennedy* is clear: school officials cannot categorically silence the religious expression of teachers simply when done in the presence of students. The Court understood that allowing government to suppress religious expression wherever others might observe it would effectively eliminate religious freedom. Teachers spend most of their waking hours at school. If they cannot engage in religious expression at work solely because students might see them, they are effectively forced to abandon their faith as a condition of employment. *Kennedy* rejected this constitutional apartheid.

### B. Rounds Is Not Entitled to Qualified Immunity Because His Conduct Violated the Clearly Established Standard of *Kennedy*.

The standard for qualified immunity is "that in the light of pre-existing law the unlawfulness must be apparent." *Wilson v. Layne*, 526 U.S. 603, 615 (1999)

(citations omitted). Public officials are immune from damages for claims brought against them in their individual capacity so long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). At no time has caselaw affirmed that teachers may not pray if a chance exists that they will be seen by students; nor does caselaw exist that a teacher can be stopped from praying in a parking lot because a student might see him or her praying. To the contrary, since *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969), the Supreme Court has emphasized that "teachers [do not] shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Although the legal framework was already established, *Kennedy* alone is sufficient here, as it was for the District Court, to establish that Barber's rights were clearly established.

Just as the coach in *Kennedy* exercised a constitutionally protected right to engage in religious activity when he prayed at the 50-yard line, Barber exercised her constitutionally protected right when she prayed at the flagpole before her workday began. Any possible justification that might have supported the school's discipline of the coach in *Kennedy*, such as the fact that his speech occurred while he was on the clock, is not present here.

While Barber made clear to Rounds that her speech would not interfere with the gathering of a student group and would occur before that group met, ROA.12-

13, Rounds ordered Barber to cease praying; his concern being that the students would eventually come to school and *might* witness Barber praying. Not only was Barber emphatic that she would not continue praying when students arrived, she had made the same point in her emails before the event. Barber emphasized, "It is only for staff before students arrive just like we have done the past three years," and "There will be no kids when we are out there." ROA.13. But Rounds's conduct was categorical; no prayer where students might possibly happen to witness it.

Rounds's directive to Barber constitutes a textbook violation of the constitutional principle *Kennedy* established. The violation becomes stark when the Court parses Rounds's actual words and compares them to *Kennedy*'s clear teaching. Rounds did not merely regulate teacher-student interaction—he imposed a categorical ban on religious expression anywhere. Rounds acknowledged that Barber sought to pray "before the school day" and separately from students, yet he prohibited even this private religious expression because she would be "visible to students." ROA.12. This sweeping prohibition encompasses exactly the type of religious suppression *Kennedy* condemned.

*Kennedy*'s reformed Establishment Clause analysis eliminates any justification for Rounds's policy. Private employee prayer, conducted separately from students, cannot reasonably be understood as government endorsement of religion. As *Kennedy* emphasized, such expression represents the individual

22

employee's private religious exercise, not government speech. *Id.* at 527-28. The fact that students might observe this private expression no more constitutes endorsement than students observing a teacher's secular personal activities.

The *Kennedy* Court recognized that public employees cannot be required to "divest themselves of their religious character while at work." *Id.* at 532. Rounds's "visible to students" standard does exactly what the Constitution prohibits—it forces Barber to hide her religious identity as a condition of employment.

Like Coach Kennedy, Barber was engaging in personal, private prayer, but was ordered to stop because that prayer constituted "demonstrative religious activity." *Kennedy*, 597 U.S. at 540. Just as the school in *Kennedy* argued "that any visible religious conduct by a teacher or coach should be deemed—without more and as a matter of law—impermissibly coercive on students," *id.*, so too did Rounds's dictate that Barber's act of prayer violated policy because students might see it. Barber had a clearly established right to engage in personal private prayer and not be barred from doing so just because a student might see her.

### C. Appellant's Attempted Factual Distinctions Cannot Survive Scrutiny.

Appellant Rounds devotes considerable effort to distinguishing *Kennedy* on factual grounds, but these distinctions collapse under analysis. In fact, each purported difference actually strengthens Barber's case.

Barber sought to engage in entirely private religious expression, separate from

any student activity. She explicitly clarified that "there will be no kids when we are out there." ROA.13. Her intended prayer was every bit as private as Coach Kennedy's—indeed, more so, since she sought to pray before students even arrived at school; unlike Coach Kennedy, who prayed in view of students, parents, and community members at the fifty-yard line of a football field. The *Kennedy* Court emphasized that Coach Kennedy's prayer occurred "on the playing field," in full public view, yet retained complete constitutional protection. 597 U.S. at 530. The public nature of religious expression does not reduce its constitutional status and Kennedy's conduct was far more public than Barber's.

*Kennedy* did not create a narrow exception for prayer on athletic fields. It established a broad principle that public employees retain their First Amendment rights at work. It condemned policies that would prevent even giving thanks over lunch because students might observe such religious expression. Appellant argues that the law remains unclear because *Kennedy* established a new "history and tradition" test. Appellant's Brief at 18-19. But Rounds is not expected to understand and participate in debates over originalism or the nuances of constitutional interpretation; he is simply required to comply with the Court's directive regarding a school employee's right to private prayer. The facts here fall squarely within *Kennedy*'s core holding rather than at its margins. Rounds applied exactly the type of categorical ban on prayer in students' presence that *Kennedy* rejected. *Kennedy*

24

makes clear that such prohibitions are unconstitutional.

Ironically, the pre-*Kennedy* cases Appellant cites demonstrate that the law was clearly established in Barber's favor. These cases uniformly addressed school employee *participation* in student religious activities—not private religious expression that students might observe. *Doe v. Duncanville ISD*, for example, involved a coach who "initiated or participated in" student prayers and was present "during school-controlled, curriculum-related activities." 70 F.3d 402, 405-06 (5th Cir. 1995). The court prohibited the coach from manifesting "approval and solidarity with student religious exercises"—not from engaging in personal religious expression that students might witness. *Id.* at 406 n.4.

Similarly, *Borden v. School District of East Brunswick* involved a coach who "led the prayers" and was told he could not "bow his head during his team's pre-meal grace." 523 F.3d 153, 155-57 (3d Cir. 2008). But notably, the school's prohibition was limited to the coach's participation in team activities—it did not extend to his personal religious expression outside the student context. Appellant's cases are irrelevant. Schools may regulate employee participation in student religious activities, but they cannot categorically suppress an employee's private religious expression simply because students might observe it. Rounds crossed that line when he prohibited Barber from praying anywhere she would be "visible to students." ROA.12.

*Kennedy* grounded its holding in the general principle that public employees retain constitutional rights at work. The Court did not create special rules for coaches versus teachers, administrators versus support staff, or any other employment categories. It did not establish a narrow rule protecting only solitary prayer by football coaches on athletic fields after school-sponsored events. Rather, *Kennedy* clearly established that the First Amendment extends to all public employees who engage in religious expression as private citizens, a principle that applies with equal force to Barber's situation. Indeed, it applies with greater force to Barber. If the First Amendment protected Coach Kennedy's highly visible prayer during a school event, it certainly protects Barber's private prayer before school hours. Rounds's sweeping ban on religious expression wherever students might be "visible" falls squarely within the category of unconstitutional conduct that *Kennedy* explicitly condemned, defeating any claim to qualified immunity.

### III.    Qualified Immunity Cannot Be Salvaged by Misapplying the Equal Access Act, Which Does Not Override Teachers' First Amendment Rights to Private Religious Expression.

Appellant's invocation of the Equal Access Act, 20 U.S.C. § 4071, mischaracterizes both the Act and this case. The Act regulates student-initiated non-curricular groups and the role of school employees in such groups. It does not, and cannot, override the First Amendment rights of school employees. The Act has

certainly never been interpreted to prohibit school employees from any religious activity where a student might happen to see it.

The Act addresses "student-initiated" meetings and groups. 20 U.S.C. § 4071(a). Its provisions regarding employee participation specifically concern employee involvement in student group activities. *Id.* § 4071(c)(3). The Act simply does not address the question presented here: whether a school can categorically ban employee religious expression anywhere students might observe it. Barber did not seek to participate in the student SYATP event. She sought to engage in her own religious expression, separately from the students, before they arrived. As she explicitly clarified, "there will be no kids when we are out there." ROA.13. This is not a case about employee participation in student activities—it is a case about employee religious expression that might be observed by students.

The distinction matters. *Kennedy* makes clear that schools cannot categorically suppress employee religious expression simply because students might witness it. 597 U.S. at 531-32. Appellant's attempt to transform this case into an Equal Access Act issue cannot obscure this fundamental constitutional violation, and the Act simply does not justify Rounds's sweeping prohibition. The Act permits schools to require that employee involvement in student groups be "nonparticipatory." 20 U.S.C. § 4071(c)(3). It does not permit schools to ban employee religious expression anywhere students might observe it.

In *Bd. of Educ. v. Mergens*, 496 U.S. 226, 231 (1990), the Supreme Court explained the limited purpose of § 4071(c)(3): it is designed to prevent the "influence over the club's religious program" that "would entangle the government in day-to-day surveillance of religion of the type forbidden by the Establishment Clause." *Id.* at 252. When government officials are acting in their official capacity, they do not participate to avoid "problems in the form of invasive monitoring to prevent religious speech at meetings at which such speech might occur." *Id.* at 253. In other words, limits on participation are targeted towards the official acts of government officials that threaten religious activities, not personal religious activities.

The cases Appellant cites prove this point. In *Daugherty v. Vanguard Charter School Academy*, the court found problematic the fact that "teachers and elementary students [were] together, for prayer." 116 F.Supp.2d 897, 910 (W.D. Mich. 2000). Similarly, in *Doe v. Wilson County School System*, the issue was teachers who "participated in" student prayer events. 564 F.Supp.2d 766, 802 (M.D. Tenn. 2008). This case involves neither scenario. Barber did not seek to pray with students or participate in their event. She sought to engage in her own religious expression, separately and before students arrived at school. Rounds prohibited even this, based solely on the possibility that students might observe her religious expression. This all goes far beyond the scope of the Equal Access Act. Because the Act neither authorizes nor excuses the categorical suppression of employee religious expression

that students might observe, Rounds cannot invoke the Act to provide qualified immunity for violating Barber's clearly established First Amendment rights.

### IV. Qualified Immunity Is Defeated on the Equal Protection Claim Because Selective Enforcement of Religious Speech Restrictions Violates Clearly Established Law.

Rounds fundamentally misapplies the qualified immunity analysis by conflating the sufficiency of pleadings with the preliminary injunction standard. Preliminary injunctions require imminent irreparable harm, while qualified immunity asks whether defendants violated clearly established law. The District Court's finding that Barber lacked ongoing harm for injunctive purposes is irrelevant to whether Rounds's original enforcement actions violated constitutional principles or constituted unequal treatment.

Qualified immunity's clearly established law prong is satisfied by well-established precedent recognizing that government officials cannot engage in content-based or viewpoint-based discrimination in employment decisions. *See Kennedy*, 597 U.S. at 526. *Kennedy* explicitly rejected the notion that school districts can enforce policies in a manner that targets religious conduct while permitting similar activities.

Rounds's argument that "no facts were alleged," Appellant's Brief at 25, ignores the actual allegations in the Complaint. The Complaint specifically alleges that Rounds singled out Barber for her religious activities while other employees

across district campuses were permitted to participate in religious activities with student groups without similar discipline. ROA.10-14. These factual allegations, accepted as true at the motion to dismiss stage, are sufficient to establish both disparate treatment and Rounds's personal involvement.

Contrary to Appellant's assertion, the Complaint alleges extensive personal involvement by Rounds in the challenged conduct. Rounds personally sent multiple emails to staff, including a direct response to Barber specifically prohibiting her from praying "with or in the presence of students." ROA.12-13. Rounds personally approached Barber and other teachers at the flagpole and directed them to move to the conference room. ROA.13. Rounds made the specific decision to enforce the district policy against Barber while allegedly permitting other employees to engage in similar religious activities with students. These actions constitute direct, personal involvement in the constitutional violation.

In addition, the Complaint adequately alleges that Barber was similarly situated to other district employees who were permitted to participate in religious activities with student groups. The allegation that "many staff members across campuses who participate in the religious activities of other student groups" were not subjected to similar discipline, ROA.23, provides a sufficient basis for comparison at the pleading stage.

The District Court correctly denied qualified immunity on the equal protection claim. Rounds's personal involvement in selectively enforcing district policy against Barber's religious speech while allegedly permitting similar conduct by other employees violated clearly established principles. The factual allegations in the Complaint, accepted as true, demonstrate disparate treatment and a violation of clearly established equal protection principles that defeats qualified immunity.

## CONCLUSION

For the foregoing reasons, this Court should affirm the decision of the District Court.

SUBMITTED BY:

> BRETT B. STALCUP
> STALCUP LAW
> 3811 Turtle Creek Blvd. Suite 175
> Dallas, Texas 75219
> Telephone: (214) 219-1000
> Facsimile: (214) 219-1003
> Email: bstalcup@stalcuplaw.com

> CHRISTINA A. COMPAGNONE
> GEOFFREY R. SURTEES
> /s/ Nathan J. Moelker
> NATHAN J. MOELKER
> AMERICAN CENTER FOR LAW
> AND JUSTICE
> 201 Maryland Avenue, NE
> Washington, D.C. 20002
> Telephone: (202) 546-8890
> Email: nmoelker@aclj.org

# CERTIFICATE OF SERVICE

I certify that on August 29, 2025, the foregoing document was filed with the Court's electronic-filing system, which will accomplish filing on all counsel of record pursuant to FED. R. APP. P. 25(c)(2).


/s/ Nathan J. Moelker

# CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), and 5th CIR. R. 32.1:  this document contains 7085 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman, with footnotes, if any, in 12-point Times New Roman.

/s/ Nathan J. Moelker