Case No. 25-20125

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Staci Barber,

Plaintiff – Appellee

v.

Bryan Scott Rounds, Principal Of Cardiff Junior High, Sued In
His Individual And Official Capacities,

Defendant - Appellant

---

On Appeal from the United States District Court For the Southern District of Texas
Civil Action No. 4:24-cv-1004

---

## APPELLANT'S REPLY BRIEF

---

Christopher B. Gilbert
Alexa Gould
Thompson & Horton LLP
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6744
Facsimile: (713) 583-8884

ATTORNEYS FOR APPELLANT

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ...................................................................................... ii

TABLE OF AUTHORITIES .............................................................................. iii

INTRODUCTION .............................................................................................. 1

ARGUMENT IN REPLY ................................................................................... 2

    A.  Rounds is entitled to qualified immunity because his actions were objectively reasonable, regardless of Barber's subjective understanding. ......... 2

    B.  Rounds is entitled to qualified immunity because *Kennedy* is inapplicable to the facts of this case. ...................................................................................... 7

    C.  Because *Kennedy* is inapplicable, Rounds did not violate clearly established law. ...................................................................................................... 11

    D.  The Equal Access Act is applicable and is essential to Rounds' qualified immunity defense. .............................................................................................. 12

    E.  Rounds is entitled to qualified immunity below on Barber's Fourteenth Amendment claims. ........................................................................................... 13

CONCLUSION AND PRAYER ....................................................................... 14

CERTIFICATE OF SERVICE ......................................................................... 16

CERTIFICATE OF COMPLIANCE ................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Backe v. LeBlanc*
   691 F.3d 645 (5th Cir. 2012) ................................................................ 2

*E.D. v. Duell v. Noblesville Sch. Dist.*
   2025 WL 2355989 (7th Cir. Aug. 14, 2025) ............................................ 5, 6

*Ecuadorian Plaintiffs v. Chevron Corp.*
   619 F.3d 373 (5th Cir. 2010) ................................................................ 9

*Fennell v. Marion Indep. Sch. Dist.*
   804 F.3d 398 (5th Cir. 2015) ................................................................ 14

*Gibson v. Blackburn*
   744 F.2d 403 (5th Cir. 1984) ................................................................ 9

*Harlow v. Fitzgerald*
   457 U.S. 800 (1982) ............................................................................ 2

*Jones v. Fountain*
   121 F. Supp. 2d 571 (E.D. Tex. 2000) .................................................. 2

*Kennedy v. Bremerton School District*
   597 U.S. 507 (2022) ....................................................................passim

*Kipps v. Caillier*
   197 F.3d 765 (5th Cir. 1999) ................................................................ 2

*Mangieri v. Clifton*
   29 F.3d 1012 (5th Cir. 1994) ................................................................ 2

*McClelland v. Katy Indep. Sch. Dist.*
   63 F.4th 996 (5th Cir. 2023) ................................................................ 12

*Nathan v. Alamo Heights Indep.*
   ___ F.Supp.3d ___. 2025 WL 2417589 (W.D. Tex. Aug. 20, 2025) ........................ 11

*Roake v. Brumley*
   141 F.4th 614 (5th Cir. June 20, 2025) .................................................. 11

*Thompson v. Upshur Cnty., TX*
    245 F.3d 447 (5th Cir. 2001) ............................................................ 2

*United States v. Herrera-Ochoa*
    245 F.3d 495 (5th Cir. 2001) ............................................................ 9

*United States v. Huntsberry*
    956 F.3d 270 (5th Cir. 2020) ............................................................ 9

**Statutes**

20 U.S.C. § 4071 ........................................................................... 12, 13

**INTRODUCTION**

This appeal underscores a core principle of qualified immunity: context matters. Here, the lower court erred by focusing on Barber's subjective beliefs and cherry-picked allegations rather than the objective reasonableness of Rounds' conduct.  Rounds, a campus principal, acted reasonably when he instructed Barber not to participate in the See You at the Pole ("SYATP") event, a student-initiated and student-led prayer gathering. A close reading of Barber's complaint reveals that Rounds did not prohibit her from praying on campus generally or engaging in private religious expressions.  He simply ensured staff did not participate in student-led religious activities, consistent with the Equal Access Act.  Moreover, Barber's reliance on *Kennedy v. Bremerton School District* is misplaced, as that case involved private, individual prayer and does not clearly establish any right for teachers to participate in student-led prayer events. Her equal protection allegations likewise fail to show that Rounds treated her differently from similarly situated employees.

Viewed in proper context, Rounds' actions were objectively reasonable.  Rounds is entitled to qualified immunity.

1

## ARGUMENT IN REPLY

**A.    Rounds is entitled to qualified immunity because his actions were objectively reasonable, regardless of Barber's subjective understanding.**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800 (1982). "Clearly established" means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 457 (5th Cir. 2001) (internal citations omitted). "Qualified immunity turns only upon the *objective* reasonableness of the defendant's acts." *Id.* (emphasis in original). The defendant's subjective state of mind is irrelevant. *Id.* Likewise, "[t]he qualified immunity determination is only concerned with the objective reasonableness of the officer's actions, not the subjective beliefs of the plaintiff." *Jones v. Fountain*, 121 F. Supp. 2d 571, 574 (E.D. Tex. 2000) (citing *Kipps v. Caillier*, 197 F.3d 765, 770 (5th Cir. 1999); *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir. 1994)). "A plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

Here, Barber's own allegations undermine her arguments. She pled that every communication Rounds had with her concerning prayer occurred specifically in the context of the SYATP event. For instance, the two emails referenced in her complaint exclusively discuss the SYATP event. [ROA.12]. Barber also admitted that, before the 2023–2024 school year, she prayed on campus—even in the presence of students—and at the flagpole without interference from Rounds. [ROA.11, 16]. By her own account, it was only after the Fellowship of Christian Athletes ("FCA") asked for permission during the 2023–2024 school year to hold a student-led, student-initiated event SYATP that Rounds restricted her conduct. [ROA.11]. These allegations foreclose any claim that Rounds broadly suppressed her private religious exercise. Instead, they confirm that the dispute is narrowly confined to her participation in a student-led event alongside students.

Specifically, Barber made the following allegations in her Complaint:

- See You at the Pole ("SYATP") . . . is a student-led and student-initiated prayer activity. . . [ROA.11].

- Fellowship of Christian Athletes ("FCA") was approved the day before the event, September 26, 2023, and Principal Rounds approved that FCA students could meet to pray at the pole before the school day began . . . [ROA.11].

- Rounds had never made an issue regarding prayer at the pole before. [ROA.11].

- In response to Staci Barber's email about SYATP, Rounds emailed staff explaining SYATP reminding staff that SYATP is a student-led event and

that Board Policy prohibits staff members from leading students in prayer with or in the presence of students. [ROA.12].

- Rounds sent this email to Barber:

> Per the email [about SYATP] that I sent earlier today (attached), per district School Board policy, employees CANNOT pray with or in the presence of students. You cannot have a student group AND staff group both praying at the pole as this would be a violation of Board policy. See you At The Pole is a student-initiated event (not staff initiated) and student-let (sic) event (not staff led). Even though it is before the school day, you are on campus visible to students in your role as an employee.

> You cannot "ask students to attend" SYATP as that would be initiating and promoting the event. A student met with me today. He provided the appropriate request, and I approved his request to hold a student-led SYATP tomorrow. Mr. Thomas will be the faculty monitor. [ROA.12].

- Until the 2023-24 school year, Staci Barber had met with a group of other teachers, approximately seven to eight people, to pray weekly before the school day began. The group had met in the school foyer, Staci's classroom, or other available spaces where it was possible students might be present. [ROA.16].

Barber also points to a 2015 conversation in which, after she sought to form a student Christian group, Rounds allegedly told her that "Katy does not have religious clubs and that Cardiff was not allowed to have any religious clubs per Katy ISD." [ROA.10]. This allegation is irrelevant. Context matters. The record contains no facts showing whether the proposed group complied with District requirements, and more importantly, Barber's decade-old request about a *student* organization bears no relation to her personal religious expression. Her own allegations that she continued to pray on

campus after 2015 demonstrate that Rounds' comment had no effect on her religious practice.

A recent Seventh Circuit case is instructive here. In *E.D. by Duell v. Noblesville Sch. Dist.*, a principal approved a student's request to form a pro-life club but denied her request to post flyers with photos reading "Defund Planned Parenthood," explaining that flyers should contain only basic information about the club meeting's time and location, to avoid having flyers on school walls that were too political, which could disrupt the school environment. 2025 WL 2355989, at *2 (7th Cir. Aug. 14, 2025). However, the principal assured the student that she could make these statements at their meetings, just not on a flyer. *Id.* The principal also did not interfere with the student wearing pro-life shirts on campus and handing out pro-life materials at a school fair. *Id.* At some point, however, it became evident that the student's mother was behind the request and was heavily involved in the club. *Id.* at *3. Because student clubs were supposed to be "100% student driven and can have no involvement from any adult," the principal suspended the club. *Id.* The student later resubmitted her application for the club as instructed by the principal, and the principal reinstated the club a few months later. *Id.*

The student and mother brought First Amendment and Equal Access Act claims against the school district and school officials, claiming the school's actions were motivated by hostility to her pro-life views. *Id.* at *1. What is relevant here is that the court dismissed the case in part because, taken in context, the principal's actions of

prohibiting the flyer and suspending the club were not to suppress speech, but to follow student-group policies and to maintain the school's limited public forum. *Id.* at *6–9. The principal let the student speak on her pro-life issues numerous times and even approved the club's reinstatement after the pamphlet incident. Similarly, here, Rounds' directive to not pray at SYATP was not about limiting Barber's private religious expression, but to comply with policies relating to student-led organization. He let her pray on campus before SYATP and did not interfere with her praying afterwards.

In sum, Barber ignores her own allegations and instead cherry-picks snippets from Rounds' communications in an attempt to portray him as categorically prohibiting her from praying on campus. That is not what she pled. Outside the context of SYATP, she does not allege that Rounds ever prohibited her from praying on campus in the presence of students or from engaging in religious conduct after SYATP. She just chose to cease her prayer meetings on her own. The district court recognized this when it denied Barber injunctive relief, noting that she had been self-censoring and that Rounds had not threatened any adverse action. [ROA.354–55]. If Barber misinterpreted Rounds' SYATP directive as a blanket ban on prayer, that is unfortunate, but it reflects only her subjective belief—not Rounds' objective conduct. Qualified immunity does not turn on a plaintiff's subjective misreading of events, but on whether the official's conduct was objectively reasonable. The district court erred by focusing on Barber's subjective belief rather than the context of her allegations, which show that

Rounds' directive was confined to a single student-led event.  In that context, Rounds'

conduct was objectively reasonable, entitling him to qualified immunity.

## B.    Rounds is entitled to qualified immunity because *Kennedy* is inapplicable to the facts of this case.

When read in proper context, *Kennedy* does not apply here.  As noted above,

Barber's recounting of her pleadings exaggerates the record.  Rounds did not prohibit

her from praying in a parking lot generally, or from praying anywhere students might

see her.  He prohibited her from praying with students at the SYATP event.  This would

be a different case if Rounds had instructed Barber not to pray at the flagpole in the

presence of students on an ordinary school day.  In such a scenario, *Kennedy* might

control.  But that is not the case before this Court.  Rounds only told Barber not to

pray at the SYATP event, a critical distinction that makes *Kennedy* inapplicable.  Thus,

when considered in context, Rounds' directive is not foreclosed by *Kennedy.*

The *Kennedy* majority underscored twenty-six times that "Mr. Kennedy prayed on

his own" while students were engaged elsewhere. *Kennedy v. Bremerton School District*, 597

U.S. 507, 513–14 (2022).  He prayed at a football game—an event open to the public,

not a student-led, student-initiated prayer gathering.  "The prayers for which Mr.

Kennedy was disciplined were not publicly broadcast or recited to a captive audience.

Students were not required or expected to participate.  And, in fact, none of Mr.

Kennedy's students did participate in any of the three October 2015 prayers that

resulted in Mr. Kennedy's discipline." *Id.* at 542.  Barber's situation is materially

different: she sought to pray with students at their event.  Even under a more generous interpretation—that she wanted to host her own SYATP event—the fact remained that she wanted to engage in prayer at the exact same time and in the exact same location as a student event.

Barber claims in her Brief that she believed that the students were not scheduled to pray at the flagpole until 8:20 am, which is why she tried to schedule her event for 8:00 am.  *Appellee's Brief* at p. 6 ("…Barber sent an e-mail to staff inviting them to pray at the flagpole at 8:00 AM on September 27, 2023—twenty minutes before their official work hours began and before the student-led FCA prayer, which she understood would begin at 8:20 AM.").  This is irrelevant for three reasons.  First, it is not what she actually pled: paragraph 19 of her Complaint pleads that Rounds approved the FCA event to start at 8:20 am, but that "Staci had *already sent* an email to the staff inviting them to gather to pray entirely before school hours at 8:00 am…."  [ROA.11, ¶ 19 (emphasis added)].  This is consistent with a statement made in her Brief, that "Rounds never mentioned or informed Barber of the scheduling of FCA's activity."  *Appellee's Brief* at p. 7.  Any suggestion that Barber deliberately tried to schedule her event at 8:00 am to avoid the FCA student event is not supported by the pleadings.

Second, it is incorrect.  Barber's statement that Rounds scheduled the FCA event for 8:20 am is made without explaining how she would have known that, particularly if "Rounds never mentioned or informed Barber of the scheduling of FCA's activity."  *Appellee's Brief* at p. 7.  The record below contains the official paperwork for the FCA

event, which shows it as being scheduled to start at 8:00 am. [ROA.259]. Concededly, this was an exhibit offered during the injunction hearing, and not a document attached to the Complaint. However, the Court has inherent authority to manage its own record and take judicial notice of undisputable facts. *See United States v. Huntsberry*, 956 F.3d 270, 284–85 (5th Cir. 2020) (and cases cited therein); *see also United States v. Herrera-Ochoa*, 245 F.3d 495, 501 (5th Cir. 2001) ("An appellate court may take judicial notice of facts, even if such facts were not noticed by the trial court."); *Gibson v. Blackburn*, 744 F.2d 403, 405 n.3 (5th Cir. 1984) (recognizing a court of appeals' authority to "enlarge the record to include material not before the district court"); *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 379 n. 11 (5th Cir. 2010) ("[W]e have suggested that we will supplement the record when consideration of particular evidence clearly reveals how a case should be disposed."). Rounds asks the Court to take judicial notice of the Application for Use exhibit from the injunction hearing—which, unlike Rounds' Declaration that Barber complains about in her Brief, is not subjective and is not reasonably subject to dispute.

Third, even if Barber genuinely believed (and properly pled) that Rounds scheduled the FCA event for 8:20 am, and the Court is leery of relying on the Application for Use that disputes that, Barber's initial belief is irrelevant. Barner claims that she sent out an email inviting people to join her at 8:00 am, but admits that Rounds immediately corrected her mistake, telling her "You cannot have a student group AND staff group both praying at the pole…." [ROA.12, ¶ 21]. She essentially concedes that

by the time she had the conversation with Rounds in the conference room, she knew that Rounds' concern was that her group was overlapping with the FCA student group's event [*see* ROA.13, ¶¶ 25-29], and all the statements that she cherry picks from that conversation must be understood within the context of Rounds' concern that students would be there.

Lastly, it is irrelevant that Barber sought to pray "before work hours" given that under the Fair Labor Standards Act, a teacher who chooses to work outside the normal "workday" hours cannot argue that she is engaging in private activity, if she is actually doing her job, a point Barber ignores in her response.

Barber's reliance on *Kennedy*'s hypotheticals is also misplaced. The Court asked whether a district could "fire a Muslim teacher for wearing a head scarf in the hallway or prohibit a Christian aide from praying quietly over her lunch in the cafeteria." *Kennedy*, 597 U.S. at 530. The Court went on to state that such prohibitions are unconstitutional and could lead to schools firing "teachers for praying quietly over their lunch." *Id.* at 540. None of these examples involve employees praying with students at a student-organized event. They all involve private, personal religious expression on campus. Barber herself pled that she engaged in Bible study and prayer on campus, and Rounds never interfered—until she sought to engage with SYATP. Thus, Barber's very own pleadings demonstrate that Rounds' actions are consistent with *Kennedy*, not contrary to it.

The issue is not whether Barber could pray in the presence of students—she was permitted to do so—but whether she could participate in a student-led event. Barber's attempt to recast her facts within the *Kennedy* framework fails.

## C.  Because *Kennedy* is inapplicable, Rounds did not violate clearly established law.

Without *Kennedy*, Barber has no authority to support her claim. It is telling that the ONLY case Barber cites to establish that her free speech/exercise rights are "clearly established" is *Kennedy* itself. Even after three years, there is little caselaw that would provide guidance as to how *Kennedy* should be interpreted in factual situations other than the specific situation that was before the *Kennedy* Court. And as noted above, *Kennedy* certainly does not clearly establish any rule with regards to when teachers may pray *with* students. By analogy, the continuing litigation battle over how *Kennedy* impacts Ten Commandment statutes that Rounds referenced in his Brief, *see Appellant's Brief*, p. 17, n.3 (citing *Roake v. Brumley*, 141 F.4th 614, 642-643 (5th Cir. 2025)), has continued into the next round: in the recent Texas case striking down Senate Bill 10, Judge Biery stated:

> The Fifth Circuit alternatively found that, even if *Stone* were overturned tomorrow, Plaintiffs had sufficiently alleged the Ten Commandments statute violates the Establishment Clause under *Kennedy v. Bremerton School District*, 597 U.S. 507, 535 (2022). The Government schools argue otherwise.

*Nathan v. Alamo Heights Indep.*, ___ F.Supp.3d ___. 2025 WL 2417589, at *23 (W.D. Tex. Aug. 20, 2025). Like the Fifth Circuit, Judge Biery found that Senate Bill 10 was

unconstitutional, even under *Kennedy. Id.* If at least one panel of the Fifth Circuit and a federal judge in Texas think *Kennedy* prohibits the posting of the Ten Commandments, and the Government of the State of Texas thinks *Kennedy* allows the Ten Commandments, how is a junior high principal in Katy, Texas supposed to understand what *Kennedy* does or does not allow?

Qualified immunity is therefore warranted because there is no clearly established rule that could have placed Rounds on notice that instructing Barber to not pray at SYATP was unconstitutional. "Our developing jurisprudence has not yet resulted in a rule that would have given fair warning to [Barber] and to every reasonable official." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1009 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 348 (2023) (internal quotations omitted). Because *Kennedy* does not apply, and because Barber cites no other authority establishing that her claimed right was clearly established, the district court erred in denying Rounds qualified immunity.

## D.     The Equal Access Act is applicable and is essential to Rounds' qualified immunity defense.

As Barber herself notes, "the Act addresses 'student-initiated' meetings and groups . . . [and] its provisions regarding employee participation specifically concern employee involvement in student group activities." *Appellee's Brief* at p. 27 (citing 20 U.S.C. § 4071). That is precisely why the Act is both applicable and relevant to Rounds' qualified immunity defense. Rounds does not contend that the Act overrides Barber's First Amendment rights. Rather, he maintains that Barber's rights were never violated

and that his actions were fully consistent with the Act.

In the emails and communications cited in Barber's complaint, Rounds explained that SYATP is a student-initiated and student-led event, he prohibited staff from praying with students at the event, and he noted that the event has a faculty monitor in a non-participatory capacity. [ROA.12]. Rounds' directives thus mirror the Act's requirements, which underscores the proper context for his directives. 20 U.S.C. § 4071. This was not a general prohibition on praying where students could observe, as Barber contends, and any statement by Rounds to the contrary are taken out of context. Rounds acted to ensure compliance with the Act's separation of student and staff participation.

Because the Act supports Rounds' directives, and because his actions did not violate Barber's First Amendment rights, the lower court erred in denying qualified immunity.

### E. Rounds is entitled to qualified immunity below on Barber's Fourteenth Amendment claims.

Barber's single allegation that KISD (not Rounds) "singled her out for her conduct while not similarly disciplining other employees for religious activities, such as the many staff members across campuses who participate in religious activities of other student groups" is insufficient to state an individual claim against Rounds. [ROA.23]. In her response, she attempts to substitute Rounds for KISD, but her own pleadings confirm that the alleged unequal treatment was directed by the District, not Rounds.

[*Compare Appellee's Brief* at p. 5 *with* ROA.23].   That substitution nevertheless fails because Rounds, as a principal at one campus, has no control over staff "across campuses."  And while this allegation might suffice to state a *Monell* claim against the District, it does not suffice against Rounds.  There are no allegations that Rounds treated Barber differently from other employees, nor that he allowed other staff to participate in prayer with students.  *See Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015). Without such factual allegations, Rounds is entitled to qualified immunity.  The lower court did not even acknowledge any equal protection claim against Rounds, likely because there was no plausible claim to address.

Therefore, because Barber does not allege facts that would plausibly suggest that Rounds individually treated her differently than similar-situated individuals as to the SYATP event because of her religion or religious activities, she cannot make out an equal protection claim against him individually, and he is entitled to qualified immunity.

## CONCLUSION AND PRAYER

For the reasons stated above and in Appellant's Brief, Appellant Bryan Scott Rounds was entitled to qualified immunity as a matter of law on Barber's constitutional claims.  Rounds respectfully requests that this Court grant his appeal, reverse the relevant rulings of the court below and render him qualified immunity, grant Rounds his costs of appeal, and grant Rounds such relief, both at law and in equity, to which he has shown himself justly entitled.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: */s/ Alexa Gould*
  Christopher B. Gilbert
  Texas Bar No. 00787535
  cgilbert@thompsonhorton.com
  Alexa Gould
  Texas Bar No. 24109940
  agould@thompsonhorton.com

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6714
Facsimile: (713) 583-8884

ATTORNEYS FOR APPELLANT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document has been forwarded to the following counsel and/or parties of record by electronic service on September 19, 2025:

Brett B. Stalcup
STALCUP LAW
3811 Turtle Creek Blvd. Suite 175
Dallas, Texas 75219
Email: bstalcup@stalcuplaw.com

Jay Alan Sekulow
Jordan Sekulow
Stuart J. Roth
Christina A. Compagnone
Geoffrey Surtees
Nathan Moelker
AMERICAN CENTER FOR LAW AND JUSTICE
201 Maryland Avenue, NE
Washington, D.C. 20002
Email: nmoelker@aclj.org


By:  /s/ *Alexa Gould*
            Alexa Gould

# <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to 5ᴛʜ Cɪʀ. R. 32.2 and .3, the undersigned certifies this brief complies with the type-volume limitations of Fᴇᴅ. R. Aᴘᴘ. P. 32(a)(7).

1.   EXCLUSIVE OF THE EXEMPTED PORTIONS IN 5ᴛʜ Cɪʀ. R. 32.2, THE BRIEF CONTAINS (select one):

    A.   <u>3575</u> words, OR

    B.   _____ lines of text in monospaced typeface.

2.   THE BRIEF HAS BEEN PREPARED (select one):

    A.   in proportionally spaced typeface using:

Software Name and Version:     **Microsoft Word 2506**

in (Typeface Name and Font Size): **Garamond 14 pt**

    OR

    B.   in monospaced (nonproportionally spaced) typeface using:

Typeface name and number of characters per inch:

3.   THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN Fᴇᴅ. R. Aᴘᴘ. P. 32(a)(7), MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

By: _*/s/ Alexa Gould*_____
    Alexa Gould