# United States Court of Appeals
# for the Fifth Circuit

---

No. 25-20125

---

United States Court of Appeals
Fifth Circuit

**FILED**

March 9, 2026

Lyle W. Cayce
Clerk

STACI BARBER,

*Plaintiff—Appellee,*

*versus*

BRYAN SCOTT ROUNDS, PRINCIPAL OF CARDIFF JUNIOR HIGH,
SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES,

*Defendant—Appellant.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:24-CV-1004

---

Before ELROD, *Chief Judge*, SMITH and WILSON, *Circuit Judges*.

CORY T. WILSON, *Circuit Judge*:

Teacher Staci Barber alleges that her school principal, Bryan Scott Rounds, prohibited her from praying on school grounds whenever students might see her, violating her constitutional rights as well as Texas law. Rounds moved to dismiss, asserting qualified immunity for the claims against him in his individual capacity. The district court denied his motion as to every claim except Barber's Fourteenth Amendment due process claim. The court concluded that Barber's complaint plausibly alleged a categorical, visibility-based restriction on teacher prayer and that *Kennedy v. Bremerton*

No. 25-20125

*School District* clearly established that such conduct violates the First Amendment. *See* 597 U.S. 507, 525 (2022). The court further allowed Barber's equal protection claim against Rounds to proceed.

Rounds filed this interlocutory appeal, contending that he is entitled to qualified immunity, in his individual capacity, regarding Barber's First Amendment free speech and free exercise claims as well as her Fourteenth Amendment equal protection claim. (Barber's Fourteenth Amendment due process claim is not at issue on appeal.) For the reasons stated below, we affirm in part and reverse in part.

## I.

Barber is a longtime teacher at Cardiff Junior High in the Katy Independent School District (KISD).[1] She is also a Christian who—prior to the events spawning this lawsuit—regularly engaged in prayer and Bible study with other teachers before the school day began.

In September 2023, Cardiff's Fellowship of Christian Athletes (FCA) club planned to host a "See You at the Pole" (SYATP) event. SYATP is an annual prayer event in which students across the country gather to pray together, usually before school at their school's flagpole. As she had done for the prior three years, Barber emailed staff inviting them to join her in prayer by the flagpole at 8:00 a.m. on the morning of the 2023 SYATP event. According to Barber, she understood that the student group would not arrive until later, after she and her colleagues finished praying.

---

[1] The facts recited here are taken from the complaint. "Because this is an interlocutory appeal from the denial of a motion to dismiss, '[w]e accept as true all well-pleaded facts and construe the complaint in the light most favorable to the plaintiff.'" *Diaz v. Cantu*, 123 F.4th 736, 742 n.2 (5th Cir. 2024) (quoting *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023)).

No. 25-20125

Rounds responded with two emails. First, in a staff-wide message, he stated that district policy prohibited employees from "praying with or in the presence of students." Second, in a separate email directly to Barber, he reiterated that "employees CANNOT pray with or in the presence of students." And he clarified that although Barber's proposed prayer gathering would take place "before the school day, [she] [would still be] on campus[,] visible to students in [her] role as an employee." Barber responded that her invitation was "only for staff before students arrive just like [she and fellow teachers] ha[d] done for the past three years. . . . There [would] be no kids when [she and her colleagues] [were] out there." Rounds replied that, even if no students were present at the pole, "[b]y 8:00 AM students are generally waiting at the front entry of the building," and their presence on campus meant that teachers' prayers at the pole would result in "a violation of school policies." When Barber and a few colleagues proceeded to pray near the flagpole on the morning of the SYATP event anyway, Rounds stopped them. Calling them into a conference room, he again indicated that teachers may not pray where students "might see" or "be influenced by" their conduct—even if such conduct occurred "when the teachers were not on school time."

Barber filed suit against KISD and Rounds, in his individual and official capacities, in March 2024. Barber's complaint alleges claims under 42 U.S.C. § 1983, for violations of her constitutional rights under the First Amendment (free speech and free exercise) and Fourteenth Amendment (due process and equal protection) as well as violations of the Texas Constitution (free speech and free exercise) and the Texas Religious Freedom Restoration Act, TEX. CIV. PRAC. & REM. CODE ANN. § 110.001 *et seq.*

Barber also moved for a preliminary injunction. The district court denied that motion, concluding that Barber had not shown irreparable harm

No. 25-20125

but declining to address whether she had demonstrated a likelihood of success on the merits.

Defendants then moved to dismiss, and Rounds asserted qualified immunity regarding Barber's federal constitutional claims against him individually. The district court granted the motion with respect to Barber's Fourteenth Amendment due process claim but denied the motion as to all other claims. The court concluded that Barber's complaint plausibly alleged that Rounds imposed a categorical ban on visible religious expression and that *Kennedy v. Bremerton School District* clearly established the unlawfulness of such restrictions under the First Amendment. The court also allowed Barber's Fourteenth Amendment equal protection claim to proceed, finding that the complaint's allegations were sufficient at the pleading stage to state a plausible claim of differential treatment by Rounds. The court thus concluded that Rounds was not entitled to qualified immunity as to those claims.

Rounds timely filed an interlocutory appeal regarding the denial of qualified immunity.[2] The district court stayed all proceedings pending resolution of the qualified immunity question.

## II.

"This court reviews *de novo* denials of qualified immunity." *De La Paz v. Coy*, 786 F.3d 367, 371 (5th Cir. 2015). Because this appeal arises on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court's review is confined to the defendant's conduct as alleged in the complaint, which must be accepted as true and viewed in the light most favorable to the

---

[2] The remaining claims against Defendant Rounds in his *official* capacity and against Defendant KISD are still pending in the district court and are not part of this interlocutory appeal.

No. 25-20125

plaintiff. *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015). To survive a motion to dismiss, a complaint must plead "factual content that allows the court to draw the reasonable inference" that the defendant is liable for the misconduct alleged; conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

The Supreme Court has established a two-part framework for determining whether a defendant is entitled to qualified immunity.[3] First, we must determine whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [government official]'s conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Second, we must determine "whether the right was clearly established." *Id.*

"'Clearly established' means that the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is

---

[3] Courts may apply this framework in whichever order they deem appropriate. *See Pearson v. Callahan*, 555 U.S. 223, 239 (2009).

doing violates that right.'" *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, "existing precedent must have placed the . . . constitutional question beyond debate." *Craig v. Martin*, 49 F.4th 404, 417 (5th Cir. 2022) (alteration in original) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).

## A.

A threshold question is how broadly the court should read Barber's allegations. At the Rule 12(b)(6) stage, the court must accept the complaint's well-pled allegations as true and construe them in the light most favorable to Barber, as plaintiff. *Ferguson*, 802 F.3d at 780. Barber asserts that the complaint alleges a blanket prohibition by Rounds on teachers engaging in any prayer that students might observe—regardless of whether the prayer was connected to a student-led event. Rounds, on the other hand, urges a narrower, contextual reading: that his directives were limited to ensuring teachers did not participate in the student-initiated SYATP gathering.

Barber's reading is consonant with the complaint's language. Her pleading alleges that Rounds told her she could not pray "in the presence of students" and could not engage in prayer where she would be "visible to students," even away from the flagpole and even "when the teachers [are] not on school time." Rounds also allegedly suggested that the mere fact that "students are generally waiting at the front entry of the building" by 8:00 a.m. rendered teacher prayer "impermissible," and he reiterated in his later exchanges with Barber about SYATP that teachers could not pray where students "might see" or "be influenced" by their conduct. Accordingly, the complaint plausibly describes a "categorica[l]" prohibition on teacher prayer extending beyond the SYATP event to *any* setting in which students might observe teachers.

No. 25-20125

Rounds counters that such a broad interpretation overreads the complaint. He emphasizes that Barber's allegations arise entirely in the context of the SYATP exchange. On this view, he intended his directives only to ensure compliance with KISD policy and the Equal Access Act, which forbids teachers from participating in student religious activities. *See* 20 U.S.C. § 4071(c)(3) (providing that "employees or agents of the school or government" may be "present at [student] religious meetings *only* in a nonparticipatory capacity" (emphasis added)). He contends that his references to the visibility of Barber's religious practice must be understood within that factual frame.

At this stage, the court may not supply narrowing inferences in Rounds's favor. *See Ferguson*, 802 F.3d at 780 ("We assess a Rule 12(b)(6) motion only on 'the facts stated in the complaint and the documents either attached to or incorporated in the complaint.'"). Taken as true, Barber's allegations describe a categorical, visibility-based prohibition on private religious expression and exercise by teachers, not merely a context-specific restriction tied to student group religious activities or 2023's SYATP event. The court therefore analyzes the question of qualified immunity under that construction of Barber's complaint.

**B.**

We first consider whether the complaint plausibly alleges facts that, if true, describe conduct violating Barber's First Amendment rights. *Katz*, 533 U.S. at 201. It does.

In Barber's telling, Rounds prohibited her from engaging in private religious expression or exercise where students might observe her. Barber alleges that Rounds instructed her that she could not pray "with or in the presence of students" and that she was prohibited from praying in any location where she would be "visible to students," even before the school

No. 25-20125

day and even outside the SYATP event. She further alleges that Rounds directed teachers not to pray where students "might see" or "be influenced by" their conduct.

This sort of visibility-based restriction of religious exercise implicates both the Free Speech Clause and Free Exercise Clause. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969) ("It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."); *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968) (The idea "that teachers may constitutionally be compelled to relinquish the[ir] First Amendment rights . . . proceeds on a premise that has been unequivocally rejected in numerous prior decisions of this Court.").

The parties chiefly spar over *Kennedy* and whether it governs this case. It squarely does.

In *Kennedy*, a school district "pressured" a high-school football coach "to abandon his practice of saying his own quiet, on-field postgame prayer[s]" and ultimately suspended him when he failed to do so. 597 U.S. at 516, 519. Coach Kennedy understood the school district's directives as effectively "banning him from bowing his head in the vicinity of students, and as requiring him to flee the scene if students voluntarily [came] to the same area where he was praying." *Id.* at 517 (alteration in original) (internal quotation marks omitted). The *Kennedy* Court held that the school district's actions violated the Free Speech Clause and Free Exercise Clause. *Id.* at 525, 543. In reaching this conclusion, the Court emphasized that the coach prayed during a time when he was free from official "duties," even though students may have been present on the field, or nearby. *Id.* at 529. And the Court noted that to sanction the school district's approach would also suggest—incorrectly—that "a school could fire a Muslim teacher for wearing a

headscarf in the classroom or prohibit a Christian aide from praying quietly over her lunch in the cafeteria." *Id.* at 531.

These principles apply with equal force here: As in *Kennedy*, a schoolteacher sought to engage in personal prayer outside instructional time, and the school district imposed categorical restrictions on her religious expression based solely on the possibility that students might be "in the vicinity." *Cf. id.* at 517, 543. *Kennedy* thus supports the conclusion that Barber's complaint plausibly describes conduct that, if proven, would violate her First Amendment rights. That satisfies the first prong of the qualified immunity inquiry as to her free speech and free exercise claims.

## C.

The second question is whether the First Amendment rights at issue were clearly established when Rounds's challenged conduct occurred. *Katz*, 533 U.S. at 201. A right is clearly established only if existing precedent places the constitutional question "beyond debate." *Martin*, 49 F.4th at 417 (citation omitted).

Barber contends that *Kennedy* supplied the requisite clarity. Again, it does. As Barber points out, *Kennedy* expressly rejected the proposition that religious expression by a public-school employee may be restricted merely because students might observe it. The *Kennedy* Court rejected the rule that "visible religious conduct by a teacher or coach" may "be deemed—without more and as a matter of law—impermissibly coercive on students." 597 U.S. at 540. As discussed above, the Court further emphasized that a teacher or coach "engaging in a brief, quiet, personal religious observance" is "doubly protected by the Free Exercise and Free Speech Clauses of the First Amendment." *Id.* at 543.

In other words, *Kennedy* clearly established that school officials may not impose categorical, visibility-based restrictions on an employee's private

No. 25-20125

religious expression or exercise outside official duties.  The Court's reasoning was not limited to the precise facts of Coach Kennedy's post-game prayer; rather, it more broadly rejected the premise that a school employee's private religious expression becomes constitutionally suspect merely because students might observe it.  Yet that premise is exactly what Barber's complaint alleges motivated Rounds's directives.  And because *Kennedy* was decided before the conduct alleged here, the constitutional rights Barber invokes under the First Amendment were clearly established at the time of Rounds's actions.

Accordingly, existing precedent placed the constitutional question beyond debate by September 2023, when Barber and her colleagues sought to engage in prayer at the Cardiff flagpole before the school day began.  If Rounds imposed a categorical ban on teacher prayer wherever students might see it, as Barber alleges, he violated clearly established law.  The district court was therefore correct to deny Rounds qualified immunity with respect to Barber's First Amendment claims.

## D.

Rounds defends his SYATP directives to Barber and the Cardiff faculty more generally by invoking the Equal Access Act, 20 U.S.C. § 4071.  That statute prohibits a public secondary school that maintains a "limited open forum" from denying student religious groups access to school facilities otherwise available to noncurricular clubs.  *Id.* § 4071(a).  The Equal Access Act allows school employees to be present at student meetings only in a nonparticipatory capacity.  *Id.* § 4071(c)(3).  The parties debate whether and to what extent the Equal Access Act applies.

Rounds reads the law to justify his actions, which he characterizes as "prohibit[ing] staff from praying with students at the [SYATP] event."  But, as explained above, Barber's complaint does not describe a cabined

No. 25-20125

prohibition on teachers praying at the SYATP event—it alleges a blanket prohibition on teacher prayer "in the presence of" or "visible to students." Those allegations, read favorably to Barber at this stage of the case, take this dispute beyond the purview of the Equal Access Act. Beyond that, it is a stretch to read the Equal Access Act—a law aimed at enhancing students' religious liberty—to curtail the private religious expression and exercise of teachers like Barber. We decline to apply the statute in the context of this case to effect that outcome.

Because her complaint plausibly alleges a categorical restriction on Barber's private religious activity, rather than regulation of staff involvement in student religious activities, the Equal Access Act does not alter the qualified immunity analysis at this stage of the proceedings.

## IV.

Barber also asserts a Fourteenth Amendment equal protection claim, alleging that KISD treated her religious expression less favorably than comparable expressive activity by other staff.

To state a claim under the Equal Protection Clause, a plaintiff must allege (1) that she was treated differently from similarly situated individuals and (2) that the different treatment stemmed from a discriminatory intent. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015). As a threshold matter, a plaintiff "must *identify defendants* who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (emphasis added) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)).

Barber's complaint attributes disparate treatment to KISD generally, not to Rounds individually. Specifically, it alleges that "KISD violated [Barber's] constitutional right to equal treatment under the law" by

No. 25-20125

"singling out Staci Barber for her conduct while not similarly disciplining other employees for their religious activities, such as the many staff members across campuses who participate in the religious activities of other student groups."

Rounds argues that the equal protection claim against him in his individual capacity fails "because there are no allegations that Rounds himself failed to discipline other employees for engaging in conduct similar to that of Barber." We agree. Because the complaint fails to allege that Rounds personally engaged in conduct that treated Barber differently from any similarly situated employee, Barber has not stated an equal protection claim against Rounds in his individual capacity. Generalized allegations of district-wide disparate treatment by KISD are insufficient to establish Rounds's personal involvement or discriminatory intent, both of which are required to state a claim. In other words, even "[t]aken in the light most favorable to [Barber]," the facts alleged do not show that "[Rounds]'s conduct violated [her] [Fourteenth Amendment] right" to equal protection. *Katz*, 533 U.S. at 201.

With no constitutional violation articulated against Rounds, qualified immunity obtains, and the equal protection claim against him individually cannot proceed. The district court erred in concluding otherwise.

*          *          *

For the reasons stated, the district court properly denied Rounds qualified immunity as to Barber's free speech and free exercise claims under the First Amendment. We therefore affirm the district court's ruling as to those claims.

However, because Barber failed to allege any equal protection violation by Rounds individually, her Fourteenth Amendment disparate

No. 25-20125

treatment claim against him falters.  Rounds is thus entitled to qualified immunity as to that claim, and we reverse the district court's contrary ruling.

AFFIRMED IN PART; REVERSED IN PART.